**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MITCHELL H. HARRISON,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:09-cv-2175-Orl-28DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

**MEMORANDUM OPINION & ORDER**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## *I. BACKGROUND*

**A.     Procedural History**

Plaintiff filed for disability insurance benefits and SSI benefits on October 26, 2006, alleging an onset of disability on July 14, 2006, due to back disorder and hypertension.  R. 116-164-68, 169-71.  His application was denied initially and upon reconsideration.  R. 116-18.  Plaintiff requested a hearing, which was held on November 20, 2008, before Administrative Law Judge Hazel C. Strauss (hereinafter referred to as "ALJ").  R. 36-115, 118-21, 124.  In a decision dated February 6, 2009, the

ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 25-34. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 18. The Appeals Council denied Plaintiff's request on August 11, 2009, and on reconsideration, on November 20, 2009. R. 1-4, 6-8. Plaintiff filed this action for judicial review on December 28, 2009. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was born in 1956 and was 52 years old when the ALJ rendered the decision. R. 33, 41. Plaintiff graduated from high school and completed three years of college; he previously worked as a pressman at a printing company, for the years he was not incarcerated. R. 47, 183, 187.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of lower spine/back problems from bulging and herniated discs and pain in his right leg. R. 51. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from lumbar degenerative disc disease which was a "severe" medically determinable impairment, but was not an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 27-28. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, as he could lift ten pounds frequently and 20 pounds occasionally; sit six hours, stand for two hours a day for 30 minutes at a time, and walk for two hours in an eight-hour workday; and could occasionally crouch, stoop and bend. R. 28. In making this determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. R. 33. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work as a pressman lifting objects weighing 100 pounds or more. R. 33. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff

could perform work existing in significant numbers in the national economy as a ticket seller, hand packager, and an assembler of small products. R. 33-34. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 34.

Plaintiff now asserts two points of error. First, he argues that the ALJ erred by finding he had the RFC to perform sedentary work contrary to treating and examining physicians' statements. Second, he claims the ALJ erred in applying the pain standard and in evaluating his credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### III. ISSUES AND ANALYSIS

**A.     RFC and the treating and consulting physicians' opinions**

Plaintiff claims that the ALJ should not have found him able to perform a reduced range of light work in light of the opinions of several treating and consulting physicians. The Commissioner argues that the ALJ properly weighed the medical opinion evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ determined that Plaintiff had the RFC to perform a range of light work with certain additional limitations. R. 28. The ALJ extensively reviewed all of the medical evidence of record and cited the testimony of the Medical Expert, Dr. Axline, on which she ultimately relied. R. 28-32.

Plaintiff contends that the ALJ erred in rejecting and discounting the opinions of his five treating and examining sources that rendered an opinion regarding the functional impact of his lumbar spine impairment and relying on the testimony of the non-examining medical expert in finding that Plaintiff could perform light work with certain restrictions. Plaintiff argues that the ALJ's stated reasons for rejecting the contrary opinions of the treating and examining sources are insufficient as a matter of law.

Plaintiff first argues that the ALJ erred in rejecting the opinion of Dr. Jakobsen, the physiatrist who had treated Plaintiff for approximately nine months, who opined that Plaintiff's herniated lumbar disc and radiculopathy rendered him "totally disabled and dependent on narcotic analgesics for marginal function in activities of daily living," and Plaintiff's condition would require surgery and a stair lift, medically necessary in light of the fact that "his functional capabilities are so limited." R. 267. Plaintiff contends that the ALJ should not have rejected Dr. Jakobsen's opinions in their entirety

-5-

based on the sole rationale that Dr. Axline, the medical expert, had found that there was no evidentiary support in the record for Dr. Jakobsen's diagnosis of radiculopathy (R 31), because his notes reflected findings of diminished sensation in the lower extremities in an L5-S1 distribution (R. 270-72, 283, 278) as well as diminished reflexes (R. 275, 273, 270-72), recognized as diagnostic of radiculopathy.

Plaintiff argues that the ME's testimony in which he disagreed with Dr. Jakobsen's diagnosis of radiculopathy (R. 70, 75-76, 80-81, 83-84, 86) did not reflect an acknowledgment of those aspects of the doctor's treatment notes.  In addition, Plaintiff argues that the ME should not have rejected the evidence of lumbar radiculopathy found in his MRI findings of lumbar disc bulges impinging on the thecal sac and in Plaintiff's complaints of lower extremity pain.  Plaintiff also argues that the opinions of several consultative physicians supported his contention of lumbar radiculopathy and were wrongly rejected by the ALJ based on the ME's opinion.

While Plaintiff concedes that Dr. Axline noted the problem with the treating or consulting physicians' opinions – which were decided in the Workers Compensation rather than the Social Security context – was that none of them addressed all the parameters for the functional capacity assessments as defined in the Social Security Act (R. 70-86; R.31), Plaintiff argues that examining physicians Drs. Nour and Miller found Plaintiff's lumbar impairment to be "totally disabl[ing]" (R. 255) and a "marked disability," rendering Plaintiff "unable to return to work." R. 263.  The opinion of a third consulting physician, Dr. Pitman, reflected a limitation to "desk work" without any "bending or lifting" (R. 258).  Plaintiff argues that "[t]he generality of these opinions, however, is not alone a reason to discredit them. On the contrary, they do reflect the unanimous assessment of each of these sources that Plaintiff can no longer perform the exertional duties of full-time work; they just fail to be more specific with regard to his particular ability to perform each of those duties." Doc. 13. He argues that at the most, the evidence from these sources may have been inadequate to determine

disability; and, if so, then the ALJ should have re-contacted these sources, not disregarded their opinions. 20 C.F.R. §§ 404.1512(e); 416.912(e). He argues that four out of five treating and examining source opinions agreed that Plaintiff's lumbar disorder prevented him from returning to full-time work activity, and the ALJ erred in relying on "the only source to have disagreed with those opinions, Dr. Axline, who never treated or even examined Plaintiff." Doc. 13.

The ALJ accurately summarized all of Plaintiff's medical records in the decision, noting that he was treated in the context of workers compensation by Drs. Shusterman, Nour, Pitman, and Miller. Plaintiff had testified at the hearing that he went to see Dr. Jakobsen because he "had a few doctors which [he] didn't like" and "went through them" before finding Dr. Jakobsen (R. 63) and he saw Dr. Tobgui in Florida for pain management (R. 53). The ALJ summarized the records as follows:

> The records from Dr. A. Shusterman, an internist, show examinations and treatment from August 1, 2006 through March 5, 2007 in connection with claimant's Workers' Compensation claim. Claimant complained of lower back pain radiating to the left lower extremity with tingling in the left lower extremity and right ankle pain while walking. At other times the pain complained of radiated to the right lower extremity. Dr. Shusterman prescribed physical therapy, pain management, chiropractic treatment and Tylenol #3, also "lumbosacral support, bed board, mattress, ankle support." On examination he had reduced range of motion in the lumbar spine with muscle spasm and trigger points. On the day he first examined claimant he indicated his disability status as "currently totally disabled."
>
> Dr. Mohamed Nour conducted an orthopedic consultation on March 15, 2007 in connection with the Workers' Compensation claim. On examination of the lumbar spine he had reduced range of motion and straight leg raise was positive at 60 degrees on the left and 50 degrees on the right in sitting and supine positions. Range of motion in ankles and toes was within normal limits. Sensory exam and deep tendon reflexes in the upper and lower extremities was normal. The diagnosis was chronic lumbar sprain/strain post trauma. He indicated a disability status as "totally disabled."
>
> Dr. Mark Pitman conducted an independent orthopedic medical exam in connection with the Workers' Compensation claim on July 19, 2007. He reviewed a report from Dr. Shusterman and also reports from Dr. Alan Miller and the MRI report of January 19, 2007 described above. He stated that claimant appeared to be in pain. Lumbar spine had reduced range of motion and straight leg raise test was positive at 30 degrees both sitting and supine. But there was no motor, sensory or reflex abnormality. The impression was chronic back strain with some evidence of disc problems. His opinion

as to disability was "moderate partial" and stated claimant could perform light duty desk type work not requiring lifting or bending.

Dr. Paul Miller also conducted an orthopedic independent medical on February 4, 2008 in connection with the Workers' Compensation claim. Claimant reported that the treatments he had been receiving had not been helpful. He also reported the use of a cane since the accident. Physical examination revealed that claimant was not in any acute distress, appearance and posture were normal and he was using a cane on the right. Range of motion in the lumbar spine was reduced with complaints of pain on all motions. However, straight leg raising test was negative on both right and left and Fabere's test was negative. Neurological exam was normal and claimant was able to walk well on heels and toes. Range of motion of the right ankle and foot was normal. Claimant had some tenderness over the medial malleolus where he had hit himself with the cane. The left ankle and foot also had normal range of motion. Among the records the doctor noted he had reviewed were EMG and NCS studies reports which were normal. His impression was lumbar sprain/strain resolving; right ankle strain resolved. Right ankle pain due to self injury. His opinion of disability was "permanent marked disability at this time. He is unable to return to work."

Most of the treatment claimant received is shown in records from June 27, 2007 through March 17, 2008 with Dr. Glenn Jakobsen, whose speciality is physical medicine and rehabilitation. On June 27, 2007 Dr. Jakobsen in a note addressed To Whom It May Concern, stated that claimant initially came to the office on April 25, 2007 due to low back pain and stiffness with pain radiating to the right leg and associated with right leg weakness. He reported that he was unable to walk without the use of a cane so Dr. Jakobsen stated "therefore, he is required to use a cane to ambulate." His diagnoses were lumbar radiculopathy with associated myofascitis and gait disorder. On October 2, 2007 in a letter to an insurance company in connection with the Workers' Compensation claim, Dr. Jakobsen stated that claimant is under care for herniated disc and resulting radiculopathy and remains "totally disabled" and dependent on narcotic analgesics for marginal function in activities of daily living. He opined claimant will require surgery, which was discussed, but claimant was concerned with post operative recovery phase. He recommended authorization of a stair lift. Following these letters are initial evaluation and clinical reevaluation forms on which Dr. Jakobsen has circled various items. On August 22, 2007 he states the claimant is "stable on current meds." The impression circled was lumbago, radiculopathy, myofascitis and gait disorder. The forms continue to show impression of lumbago circled. On November 19, 2007 claimant reported that he had fallen on the street when his leg gave out and needed a few extra Percocet because of pain. Claimant's left rib gage [sic] was bruised, but had improved at the next visit on December 10, 2007. On January 7, 2008 the Oxycontin was reduced and the doctor stated claimant is awaiting authorization for surgery and will then taper the meds and refer to pain management. On January 23, 2008 claimant reported he was out of medication and the doctor stated "will begin detox" and instructed the tapering "from 4/day to 3/day etc." and Percocet was prescribed. On January 30, 2008 he prescribed Valium with instructions to taper it. The next visit on February 18, 2008 he continued

>to instruct to reduce the Valium.  Claimant was discharged from care on March 17, 2008 because he was moving to Florida.
>
>Treatment records in Florida begin July 2, 2008 with Dr. M.A. El-Tobgui who states on that day, insofar as legible, claimant reported "doing well" pain level 6-8 and "feels fairly well and sleeping on and off, had hurt his back a week ago."  He prescribed Percocet, Soma and Valium.  Subsequent notes continue claimant's report of "doing well" and sleeping well.  Percocet was changed to Tylenol #4 as needed on November 17, 2008.

R. 31.

After weighing this evidence, the ALJ subsequently relied on Dr. Axline's testimony and opinion.  State agency medical or psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I).  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180, at *2 (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)). "[T]he opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id.* at *2.  "[T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant." *Id.* at *7.  The ALJ may use the opinions of testifying

experts to make sense of the record. *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (reasoning that ALJ properly relied on testimony of non-examining physicians in order to make sense of the record).

The ALJ relied on the opinion testimony of Dr. Axline, a specialist in orthopedic surgery and the Medical Expert who reviewed all of Plaintiff's medical records (submitted to him in advance) to make sense of the record:

> Dr. John Axline, Board certified orthopedic surgeon, testified after reviewing the entire file and hearing the testimony. He concluded that claimant has lumbar spine disc disease on two levels, but no radiculopathy or weakness is demonstrated, no weakness in the right lower extremity, no neurological impairment in the lumbar spine. Dr. Axline commented that claimant uses a cane on the right side, which is not consistent with a right side problem, as the cane would be used on the opposite side. Therefore, it is not clear that he needs the cane at all. Dr. Axline opined that the claimant does not have an impairment that meets or is equal to a listing because the requirements of section 1.04 A, B, and C are not present as explained above in my Finding 4. Dr. Axline noted Dr. Pitman's statement assessing an ability for light duty, but he did not give the parameters required; Dr. Jakobsen continues to state radiculopathy, but there is no support for that in the record; Dr. Nour recommended a lumbar performance test but this was not done. Dr. Axline noted that no physician addressed all the parameters for the functional requirements used by Social Security. Considering the record as a whole he opined that standing in one spot would be more troublesome than walking [listing his opinion of Plaintiff's RFC]. . . . He felt the record does not establish a need for a cane, particularly because there is no neurological weakness.

R. 31.

The ALJ gave Dr. Axline's opinion significant weight, finding his testimony persuasive as he had the most appropriate expertise as an orthopedic surgeon, he had reviewed the complete file and heard the claimant's testimony, and he explained the basis for his conclusions, citing to the record. R. 31. The ALJ compared Dr. Axline's opinion to the other physicians' and found that no other physician had given a comprehensive opinion of Plaintiff's functional limitations. R. 31.

The ALJ also specifically distinguished the "marked" and "totally disabled" findings of Drs. Miller, Nour, and Pitman, because they were assessed under the Workers Compensation system:

-10-

>In addition, I have considered the reports from Paul Miller, M.D., and M. Nour, M.D., and Mark Pitman, M.D. in which the doctors state that the claimant had a "permanent marked disability" and that the claimant is "totally disabled" and "moderate partial causally related disability." I note that these doctors are examining with regard to the Workers' Compensation claim and the test for disability for Workers' Compensation is not the same as for Social Security and Social Security is not bound by any decision of any other agency. Moreover, 20 CFR 404.1527 clearly states that such opinions regarding whether or not a claimant is disabled are opinions which are strictly reserved to the Commissioner. Accordingly, these opinions are given no special significance. Dr. Mark Pitman, M.D. opined that the claimant had chronic back strain and some evidence of disc problems but that he could perform "light duty work such as desk work that does not require bending or lifting." However, he did not define what light work was using appropriate functional parameters and therefore, Dr. Pitman's opinion is not given significant weight. Although Dr. Calvino made a thorough examination of the claimant, which was essentially within normal limits, and spoke in terms of claimant being "mildly limited" for certain activities, such designation is not within the guidelines of the regulations for assessing functional capability. In addition, based on the examination, he found claimant to be unrestricted in other activities. Giving the claimant the benefit of doubt, and knowing that Dr. Calvino did not review his file, I give lesser weight to his opinion than Dr. Axline.
>
>Finally, I have considered the testimony of medical expert, John Axline, M.D., who testified at the hearing. The doctor reviewed the evidence of record and testified that it should be noted that Dr. Nour recommended that the claimant undergo a lumbar performance test but that this was not done. Furthermore, the doctor testified that there is no medical evidence to support Dr. Jakobsen's claim that the claimant suffers from radiculopathy and that though the claimant is using a cane, the claimant issuing it on the wrong side, which brings into question whether or not the cane is really necessary. Finally, the doctor noted that despite the claimant's assertions that he suffers from radiating pain, medical records show that a nerve conduction study had findings within normal limits. Therefore, based upon the consistencies between the objective findings and the doctor's opinions, I give Dr. Axline's testimony significant evidentiary weight.

R. 32.

As Dr. Axline noted, Plaintiff reported right-sided symptoms, but examinations had failed to reveal weakness or neurologic deficit in the right lower extremity, and the ALJ is correct that nerve conduction studies performed on August 10, 2007, were normal and did not indicate radiculopathy. R. 83-85, 263. Given Plaintiff's testimony of bad right-sided symptoms, Dr. Axline testified that Plaintiff should be using a cane on the left side, or opposite side of the extremity involved, and Plaintiff's use of a cane on the wrong side suggested that Plaintiff did not need a cane at all. R. 83-84.

-11-

The ALJ rejected Dr. Jakobsen's diagnoses, finding them unsupported, in light of Dr. Axline's very specific criticisms of Dr. Jakobsen's speculative opinions outside of his expertise as a physiatrist[1]. R. 80. He first discussed Dr. Jakobsen's findings:

> [Dr. Jakobsen's note say] the gait was antalgic, but it doesn't specify which was the tender leg. And the neurological examination recorded as normal, but the diagnosis in the same doctor ten days later is lumbar radiculopathy. The diagnosis of lumbar radiculopathy is not supported by any examination by that doctor any other doctor, so that I did not – that was a paradox of [Dr. Jakobsen's records.] . . . The next entry is June [2007], the same exhibit, [and] Dr. Jacobson said he requires a cane.

R. 75-76. Dr. Axline reviewed Plaintiff's MRI of the lumbar spine from January 19, 2007 which showed three of the discs were either normal or showed mild bulging; at L2-3, bulging disc impinging on the sac and extended to the right foramena. R. 73. Dr. Axline explained to the ALJ that the significance of the MRI finding was that it was "just a finding. You can have those findings on people of his age, you have no symptoms, so it's not necessarily of any significance. I'm just reporting the contents of the file and I will give you my opinion." R. 73. He added, "That finding is commented [is] not necessarily causing any symptoms. Okay. At L4-5 then on that same MRI there was a small right protrusion which impinged on the sac." R. 73. In addition to discussing other normal testing results, Dr. Axline noted the EMG of August 10, 2007 revealed the impression of a normal study, or lack of nerve problems. R. 80.

> Dr. Axline criticized the physiatrist Dr. Jakobsen's opinion, at length and in detail:
>
> He says in that record [of October 2, 2007] he believes back surgery will be required. And he comments on climbing stair lift at home and the treatment. This is all very mysterious because Dr. Jacobson does not do back surgery as far as I can tell from his credentials I am aware of, and his speculating on what surgery would be done and what is required is just frivolous, really. . . . I think it's frivolous for a non-surgeon to speculate on what the surgeon will do if he does surgery and what his post-op management will be. . . . I found that amazing that's in the file because – and the diagnosis that he renders in that same report three weeks later, six weeks later, is the

---

[1]A physiatrist is a physician who specializes in physical medicine and rehabilitation or administers physical therapy. Stedman's Medical Dictionary.

> diagnosis is lumbago which is really not orthopedic and not even physiatry language. That's lay [person's] language.
>
> * * *
>
> My opinion diagnosis is he has degenerative disc at two levels in the lumbar spine, but he does not have any radiculopathy or leg weakness. He uses a cane on the right side, but that's the leg where his symptoms are, and that's not the way you use a cane. The cane is used on the opposite side of the involved extremity. No one has found any weakness or any neurologic deficit in his right lower extremity, and we have numerous recordings of normal. Normal, normal, normal for examiner. So he does not have any neurologic impingement by the degenerative disc disease in his lumbar spine. He does not meet or equal any orthopedic listing. . . . [H]e doesn't have spinal stenosis. That's not even recorded in the file. he does not have arachnoiditis and so forth. So we're left with degenerative disc disease 1.04A, and he does not meet the criteria for listing. He has asymptomatic disc degeneration, but does not have . . . any evidence of nerve root compression. Limitation of motion of spine is variable, but he has no motor loss, and no sensory loss, no reflex loss. Positive straight leg raising is only occasionally found by certain examiners. Mostly examiners find straight leg raising to be normal throughout the entire period of the record. And had he had some surgery and had neurologic residuals . . . he doesn't have that. He does not have spinal arachnoiditis. he does not have spinal stenosis. So B and C in 1.04 do not apply in this case.

R. 81-84.

Dr. Axline noted that one of the consulting physicians, Dr. Miller, recommended a lumbar performance test which he opined would have been similar to a functional capacity evaluation, testing how much weight Plaintiff could lift from the floor to the waist and how much weight he could carry. R. 86. Dr. Jakobsen's notes of January 7, 2008 noted that Plaintiff could not take "the test" because he became tired (but it was unclear what test was referred to because the records were not legible enough to read). R. 86.

Dr. Axline opined that Plaintiff's degenerative disc disease would be problematic if he were standing in one spot too long, so he should not stand in one spot for greater than 30 minutes, but Plaintiff could walk for an hour at a time for 2 hours in a day; could sit for 6 hours in an 8-hour day as long as he could change position; could lift 20 pounds and lift and carry 10 pounds frequently; could occasionally crouch, stoop, and bend. R. 86-91. The ALJ's reliance on the opinion of Dr. Axline, an expert in orthopedic surgery, and his complete review of all the medical evidence including

-13-

Plaintiff's testimony, is based on substantial evidence. Accordingly, good cause existed for the ALJ's failure to credit the "total or marked disability" opinions of Dr. Jakobsen and the other consulting physicians.

### B.     Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his pain due to lumbar degenerative disc disease and in finding that Plaintiff's subject complaints were not credible to the extent they were inconsistent with the RFC assessment the ALJ determined. R. 33. He contends that the ALJ failed to provide adequate and specific reasons for discrediting his complaints.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard (being that the decision was made in New York and Plaintiff chose not to transfer his case), the ALJ was aware of the governing standards for evaluating subjective complaints because she cited the applicable regulations

-14-

and Social Security Ruling ("SSR") 96-7p, and a parallel test condensed into two steps. R. 28, 32. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). In this case, the ALJ complied with the standards, determining that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that a credibility determination must be made for Plaintiff's subjective complaints, the ALJ plainly recognized that she had to articulate a reasonable basis for her determination. In the context of determining Plaintiff's RFC, the ALJ accurately summarized Plaintiff's testimony:

> The claimant testified that he, his son and his son's mother had been living together for twenty years in New York. In May 2008 he flew with his son's mother to Florida to search for an apartment to relocate together. They stayed two days and found a two family house that was suitable for them to share. Claimant bought a car in Florida and they moved to Florida that same month. Claimant took a two hour twelve minute flight from Florida the day before the hearing, stayed overnight at a hotel near the airport, took a taxi to the hearing and was expecting to return to Florida the night of the hearing.
>
> Claimant testified that his son's mother does the cleaning and cooking and he drives her to shop for food once a week and to other places she wants to go. He said that he has a special seat for the car that helps him to sit for an "extra couple of hours." A typical day is spent lying in bed at least fifteen to sixteen hours. He said he gets "three to four hours tops" sleep at night. While lying in bed he will use his computer, burn DVD's, watch movies and communicate with friends online. When in New York, prior to relocating, he would travel by bus or sometimes by cab to visit his doctors. He drives in Florida to visit Dr. Tobqui who examines him and prescribes medication. He takes one pain pill at a time, either Percocet or Oxycontin together with a muscle relaxant. He also takes Valium and Ambien. He said that he has pain that radiates from his back down to his right leg 1 to 3 times a week and sometimes it goes up to his right shoulder. Claimant also testified that the medication brings the pain level from "15 down to 3" so "pain management definitely works." He complained that side effects of the medication are drowsiness, feeling lethargic, dry mouth, blurred vision, but no eye problem, and sometimes stomach upset. He said at this point that he can't drive, although he had already testified that he does drive to shop and to other

-15-

> places his friend wants him to take her. He also said that he "doesn't feel anything when on medication, feel[s] like a zombie." He claimed the doctor said that is the nature of the medication. He also testified he can't walk more than 4 to 5 minutes at a time and walks with a forward gait, but later on testified that he can walk, stand and sit 10 minutes each at a time. He said he tried to lift 25 pounds of kitty litter but can lift maybe 5 to 10 pounds. Other methods he uses to deal with his pain are a TENS unit, an orthopedic belt and orthopedic cushions in his house.
>
> The claimant testified further that he lived on the second floor of a two family house in New York and "walking was a ten minute job." He attends religious services once or twice a year on the holy days, watches television "all the time," smokes 10 to 15 cigarettes a day, dresses and showers, but his friend helps him put on his socks, cuts his toenails and helps him into the shower because it is hard to raise his left leg above the tub to get into the shower.

R. 29. Immediately following the description of Plaintiff's testimony, the ALJ recited at length a summary of each set of medical treatment records from Plaintiff's treating physicians and the consulting/examining Workers Compensation physicians (as quoted above in Section A), before analyzing and discounting Plaintiff's testimony regarding side effects, as follows:

> With regard to the claimed side effects of medication, Dr. Axline noted that Dr. Jakobsen was detoxing him before he went to Florida. He said if a person is not used to Percocet, it could cause some drowsiness, and if taken every day a tolerance is developed for medication and there are no side effects. He noted that although claimant alleged the extreme side effects to which he testified, he could still burn and watch DVD's and television and communicate with friends and drive a car. Dr. Axline felt the claimant has no limitations due to the medication he is taking. In response to questions, Dr. Axline said that pain is subjective as is tenderness and that sitting does not compress the discs. I find Dr. Axline's testimony persuasive as he has the most appropriate expertise as an orthopedic surgeon; he reviewed the complete file and heard the claimant's testimony, he explained the basis for his conclusions, citing to the record and no physician has given a comprehensive opinion as to claimant's functional limitations.
> * * *
> Finally, I have considered the testimony of medical expert, John Axline, M.D., who testified at the hearing. The doctor reviewed the evidence of record and testified that it should be noted that Dr. Nour recommended that the claimant undergo a lumbar performance test but that this was not done. Furthermore, *the doctor testified that there is no medical evidence* to support Dr. Jakobsen's claim that the claimant suffers from radiculopathy and that though the claimant is using a cane, *the claimant is using it on the wrong side, which brings into question whether or not the cane is really necessary. Finally, the doctor noted that despite the claimant's assertions that he suffers from radiating pain, medical records show that a nerve conduction study had findings within normal limits.* Therefore, based upon the consistencies between the

-16-

> objective findings and the doctor's opinions, I give Dr. Axline's testimony significant evidentiary weight.

R. 31, 32 (emphasis added).

Where an ALJ decides not to credit a claimant's testimony about his subjective symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues that the ALJ should not have discounted Plaintiff's statements about the side effects of one of his medications, Percocet, based on Dr. Axline's opinion which Plaintiff argues had "no reasonable basis" and was "a sweeping generalization" contrary to the published monograph for the drug which says nothing about side effects being ameliorated due to an acquired tolerance. Doc. 13.

In this case, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ cited Plaintiff's testimony about his trip to Florida to find a new residence to which to relocate from New York, about his two-day search for a new apartment, the move from New York to Florida, buying a car to drive in Florida, traveling back to New York for the hearing, and his inconsistent testimony about the amount of driving he could tolerate. In addition to Dr. Axline's opinion, the ALJ discounted Plaintiff's testimony that he was lethargic, like a "zombie," and drowsy, by citing Plaintiff's own contradictory testimony that he uses the computer, burns DVD's, watches movies, and watches TV "all the time," and communicates with friends online during the day. Medical records also reflect Plaintiff's report in January 2007 that he cooked three to four times per week, did laundry once per week and shopped as necessary. R. 234. In July 2007, Plaintiff was

examined by Dr. Pitman, a consulting orthopedic surgeon, who recommended treatment with trigger point injections in the right lower lumbar region and a course of epidural injections. R. 258. Plaintiff told Dr. Pitman that he had refused local injections to his back because he does not like needles; he refused epidural injections because his sister had them and told him they only last for an hour and he "knows they won't work"; he was "not interested in back surgery." R. 256. Plaintiff told Dr. Pitman that "he would rather be the way he is and 'sit in a wheelchair.'" R. 256.

Just one month later in August 2007, Dr. Jakobsen noted that Plaintiff's statements that "I wish they will [sic] authorize surgery," even though no orthopedic surgeon had recommended surgery, only Dr. Jakobsen, who is not a surgeon but a physiatrist. R. 273. Notes in January 2008 reflect Plaintiff's statement that he is "awaiting authorization for surgery" and Dr. Jakobsen would "then taper meds and refer to pain management." R. 280. Two weeks later, Dr. Jakobsen began tapering the medications when Plaintiff reported being "out of meds"; and he continued the plan to taper him off the opioids and refer him to an outpatient pain management program, which did not happen because Plaintiff was discharged from care when he moved to Florida in March 2008. R. 281-82, 284.

The ALJ also contrasted Plaintiff's complaints of pain radiating down to his right leg and up to his right shoulder with the medical opinion of Dr. Axline that there was absolutely no evidence of nerve problems in any of the medical evidence which uniformly reported normal nerve testing results and that Plaintiff was using a cane on the wrong side of his body. R. 29. The ALJ's reasons included inconsistencies between Plaintiff's own testimony and the examination findings, as well as inconsistencies between his statements and his activities of daily living, travel, and driving. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. Accordingly, the ALJ's reasons are supported by substantial evidence.

### *IV. CONCLUSION*

As noted by Dr. Axline, "The man has a lot of symptoms, but he doesn't have any findings. That's the dilemma the judge has." Recognizing this difficulty, the ALJ carefully analyzed the evidence presented. This analysis and resulting determinations are the essential functions to be preformed by an ALJ. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). **The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.**

**DONE** and **ORDERED** in Orlando, Florida on March 14, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record